UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>vs.<br><br>CARLOCITO SLIM, a/k/a<br>CARLOCITO PONCE SLIM,<br><br>              Defendant. | CR. 17-50126-JLV<br><br>ORDER |

## INTRODUCTION

A grand jury indicted defendant Carlocito Slim on charges of attempted commercial sex trafficking of a minor and attempted enticement of a minor using the internet. (Docket 48). Pending before the court is defendant's motion to suppress statements he made to law enforcement officers and evidence seized from his vehicle and cell phones. (Docket 64). The government opposes the motion. (Docket 70).

The suppression motion was referred to Magistrate Judge Daneta Wollmann for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and the court's April 1, 2018, standing order. The magistrate judge conducted an evidentiary hearing on January 30, 2019, at which three witnesses testified and two exhibits were received into evidence. (Dockets 71 & 72). The parties submitted post-hearing briefing. (Dockets 77 & 80). The magistrate judge then issued a report and recommendation ("R&R") concluding

defendant's motion should be denied.  (Docket 84).  Defendant timely filed objections to the R&R.  (Docket 85).  The government did not object to the R&R but instead did respond to defendant's objections.  (Docket 88)

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files written objections to the magistrate judge's proposed findings and recommendations, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.  For the reasons given below, the court overrules defendant's objections to the R&R and adopts the R&R as modified by this order.

**I.   Facts**

The South Dakota Department of Criminal Investigation ("DCI") and other law enforcement agencies conducted a sting operation during the 2017 Sturgis Motorcycle Rally targeting "Internet predators[.]"  (Docket 74 at p. 5). As a part of that operation, Special Agent Toby Russell ("SA Russell"), "in an undercover capacity as a pimp," placed an advertisement titled "Who Wants to Be Naughty?" on Backpage.com, a website "used widely for prostitution[.]"[1]  Id. at pp. 6, 25, 51.  The advertisement contained three "age-regressed photos of a

---

[1]The magistrate judge found SA Russell's testimony at the suppression hearing credible.  (Docket 84 at p. 2).  Defendant does not challenge the credibility finding and the court adopts it.

2

female who is involved in law enforcement" and stated the poster of the advertisement was 20 years old.  Id. at pp. 25, 51.  SA Russell testified the female in the photographs appeared younger than 20 years old.  Id. at p. 26.

Defendant responded to the Backpage advertisement on August 9, 2017. Id. at pp. 31-32.  He sent a text message to the phone number associated with the advertisement, which belonged to SA Russell.[2]  Id. at pp. 30-31.  The message asked if the female was available for a massage.  Id. at p. 31.  SA Russell responded, "This girl is fresh as hell.  She's 15, going to be 16."  Id. at p. 51.  SA Russell also said the rate for the girl was $150 "HH" and $200 "FH." Id. at p. 32.  He testified HH referred to half-hour and FH to full-hour, implying for sexual intercourse.  Id.  Defendant responded, "Okay, would like to see her first, bro."  Id. at p. 49.  SA Russell did not respond because of his involvement "in other unrelated investigations . . . that evening" and defendant sent two follow up texts.  Id. at pp. 32, 50.

The next day, August 10, defendant again texted SA Russell, asking if the girl was available at 9 p.m. that evening and stating "he wanted a full hour for $200."  Id. at p. 33.  Defendant did not explicitly state he wanted the hour for sexual intercourse with the girl.  Id.  SA Russell told defendant the girl would be available and he would set up logistics later.  Id. at pp. 33-34.  Around

---

[2]A copy of the text messages is not in the record because defense counsel improperly introduced the issue of probable cause into these proceedings after the suppression hearing.  See infra Section III.A.  The description of the text messages given here is derived from SA Russell's testimony at the hearing.

3

7 p.m. that evening, SA Russell asked if defendant was still interested in the 9 p.m. meeting and he confirmed his interest. Id. at p. 34. SA Russell then told defendant it would cost extra if he did not wear a condom. Id. SA Russell and defendant agreed to meet by the Country Market sign in the parking lot of the Flying J Truck Stop in Rapid City, South Dakota. Id. at pp. 7, 9. Defendant stated he would be driving a white Chevrolet car. Id. at p. 8.

At approximately 9:30 p.m., SA Russell observed a white Chevrolet car pull into the truck stop parking lot near the Country Market sign. Id. at pp. 8-9. Defendant then texted SA Russell to say he was at the location. Id. at p. 9. SA Russell then observed the white Chevrolet drive from the area by the Country Market sign to the front of the convenience store area of the truck stop and park there. Id. at pp. 9-10. Law enforcement then arrested defendant. Id. at p. 10.

After defendant was arrested, Rapid City Police Department ("RCPD") Detective Jeremy Stauffacher ("Det. Stauffacher") searched his vehicle.[3] Id. at pp. 56-59. Det. Stauffacher testified the vehicle's windows were not tinted and that a single condom, $200 cash and a box of condoms were all in plain view. Id. at pp. 56-57. Det. Stauffacher did not testify he personally observed those items before he opened the car door. Det. Stauffacher also located two cell

---

[3]Det. Stauffacher testified at the suppression hearing and the magistrate judge found him credible. (Docket 84 at p. 5). Defendant does not challenge the credibility finding and the court adopts it.

4

phones in the car, one of them an iPhone  Id. at p. 58.  The iPhone was located in a closed portion of the vehicle's center console.  Id.

DCI Special Agent Brent Gromer ("SA Gromer") took a ZTE TracFone cell phone out of defendant's vehicle and turned it on.[4]  Id. at pp. 68, 70.  The TracFone was located on the front passenger side floorboard, accessible to the driver.  Id. at pp. 58, 70.  He observed a message preview on the phone's home screen that matched a message he knew SA Russell had sent to defendant.  Id. at p. 69.  SA Gromer then placed the phone in airplane mode to "remove[] the cell phone from the network so it can't be remotely wiped."  Id. at pp. 69-70.  Law enforcement later obtained a search warrant for the iPhone and the TracFone.  Id. at pp. 78-79; see also Docket 70-1.

While Det. Stauffacher and SA Gromer were searching the vehicle, SA Russell and Special Agent John Barnes interrogated defendant at the Homeland Security Investigations office in Rapid City.  (Docket 74 at pp. 11-12, 16).  The magistrate judge received a video recording and transcript of the interrogation into evidence.  Id. at pp. 14-15.  SA Russell informed defendant he was not free to leave and administered Miranda warnings.[5]  (Docket 70-3 at p. 5).  During the interview, defendant was calm and cooperative with the agents.  (Docket 84 at pp. 3-4).  The agents did not

---

[4]The magistrate judge found SA Gromer's testimony at the suppression hearing to be credible.  (Docket 84 at p. 6).  Defendant does not challenge the credibility finding and the court adopts it.

[5]Miranda v. Arizona, 384 U.S. 436 (1966).

5

intimidate or mislead defendant, nor did he appear tired, confused or otherwise susceptible to intimidation.  Id.

At the suppression hearing, Det. Stauffacher and SA Gromer testified regarding DCI's inventory search procedures.  Det. Stauffacher testified the policy requires searching a vehicle, documenting its contents, and towing it to a safe location when the sole occupant of the vehicle is arrested.  (Docket 74 at pp. 59-60).  SA Gromer testified to the same.  Id. at p. 65.  No government witness testified regarding a completed inventory log of items seized from defendant's vehicle.  In its response to the defendant's objections to the R&R, the government filed the inventory log.  (Docket 88-1).

## II.   Defendant's Objections

Defendant does not raise any specific factual objections to the R&R, but instead provides a statement of facts that the government claims is inaccurate and misleading.  (Dockets 85 at pp. 1-4 & 88 at pp. 3-5).  To the extent defendant intended to object to the magistrate judge's factual findings, the objection is overruled.  The court adopts the R&R's factual background as modified by the factual findings made above.  See supra Section I.

The court distills four legal objections to the R&R from defendant's filing.  As summarized by the court, defendant objects to the magistrate judge's conclusions that:

   1.   Defendant waived a challenge to validity of the probable cause for his arrest.  (Docket 85 at pp. 6-7).

6

2. Defendant's statements to law enforcement were voluntary. Id. at p. 5.

3. Defendant's vehicle was validly searched incident to his arrest. Id. at pp. 5-8.

4. Evidence taken from defendant's TracFone should not be suppressed. Id. at pp. 8-9.

The court overrules each of these objections and adopts the R&R as modified by this order.

III. Analysis

   A. Probable cause

The magistrate judge concluded defendant waived any challenge to the probable cause underlying his arrest in the Flying J parking lot. (Docket 84 at pp. 22-23). She noted defendant did not raise probable cause as an issue in his motion, did not dispute probable cause at the evidentiary hearing and raised the issue for the first time in his post-hearing briefing. Id. At that point, the government had no opportunity to respond.

Defendant argues the magistrate judge erred in finding he waived his probable cause challenge. He asserts he did not discover the lack of probable cause until the hearing and that he did in fact raise probable cause as an issue in his suppression motion. (Docket 85 at p. 6-7). These arguments are meritless. The most cursory discovery request or client interview would have notified defense counsel that law enforcement arrested defendant without a warrant. Defense counsel could have then placed the issue of probable cause in contention by raising it in the suppression motion. At the very least,

7

counsel could have made his intention to contest probable cause clear during the suppression, allowing the government to offer evidence tailored to that issue.

It is also untrue that the suppression motion raised probable cause as an issue. Defendant points to a prefatory sentence in the section of the motion arguing the vehicle and cell phone searches were warrantless and unconstitutional. In the sentence, defendant stated "the Fourth Amendment to the Constitution prohibits unreasonable searches and seizures and requires that probable cause support each warrant issued." (Docket 64 at p. 2). This sentence clearly related to defendant's argument against the searches. Neither the government nor the court could have divined from the sentence that defendant intended to challenge the arrest's probable cause.

The magistrate judge in no way erred by concluding defendant waived his probable cause argument. At this point, the appropriate method for defendant to raise a new suppression issue out of time would be to file a motion establishing good cause under Federal Rule of Criminal Procedure 12(c)(3) for an untimely second suppression motion. However, in the circumstances of this case, the court concludes a second suppression motion and hearing focused on probable cause is unnecessary and would waste judicial resources. The government's evidence at the first suppression hearing abundantly established probable cause for defendant's arrest.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause[.]" Hosea v. City of St. Paul, 867 F.3d 949, 955 (8th Cir. 2017) (internal quotation omitted). "Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense." Id.

> Whether probable cause exists is a question of law to be determined at the moment the arrest is made, and any later developed facts are irrelevant to the analysis. A[n] [agent] need not conduct a "mini-trial" before effectuating an arrest and when assessing whether a suspect possessed the state of mind required for the crime . . . he need not rely on an explanation given by the suspect.

Nadler v. City of Papillion, 917 F.3d 1055, 1058 (8th Cir. 2019) (internal quotations and citations omitted).

At the time of the arrest, SA Russell knew defendant had responded to an advertisement featuring a young-looking female on a website known for prostitution. SA Russell told defendant the female was 15 years old and he would have to wear a condom. Defendant arranged to pay $200 and meet with the female, giving identifying information about his vehicle. Defendant then arrived at the pre-arranged location in the vehicle he described to SA Russell. These facts establish probable cause to arrest defendant for violating federal laws prohibiting attempting to entice a minor into illicit sexual activity and attempting to solicit a minor into commercial sex acts.

Defendant's argument the advertisement confused him and he believed he was meeting with a 20-year-old woman is irrelevant in a probable cause

9

determination.  Law enforcement did not learn of defendant's alleged confusion until the post-arrest interrogation.  That information therefore does not impact the probable cause analysis.  Nadler, 917 F.3d at 1058.  Even if defendant's confusion factored into the analysis, the objective evidence of his intent to have sex with the fictional minor—arranging a meeting in which he would pay $200 for an hour of activity involving a condom after being told the female was 15—far outweighs his post-arrest denials.

As the magistrate judge repeatedly recognized, defendant is attempting to argue his innocence on intent grounds in the guise of a probable cause analysis.  (Dockets 74 at p. 53 & 84 at p. 10 n.1).  The appropriate audience for these arguments is a jury.  The court finds law enforcement had probable cause to arrest defendant on August 10, 2017.  Defendant's objection to the contrary is overruled.

### B. Voluntariness

The magistrate judge found defendant's statements to law enforcement during the post-arrest interrogation were voluntary.  (Docket 84 at pp. 7-12).  She concluded there was no law enforcement coercion in the interrogation and defendant had no impairment rendering him susceptible to making an involuntary statement.  Id.  Defendant objects, asserting "[t]he use of trickery, illegal custody because of the absence of any probable cause to arrest him, leading questions, interruptions, and not allowing [him] to finish his answers" rendered his statements involuntary.  (Docket 85 at p. 5).  Defendant

10

specially argues the mismatch between the age posted on the Backpage advertisement and the age SA Russell gave him via text message constitutes trickery. Id. He further asserts the agents "never allowed [him] to set forth his desire to have a massage by an of age woman, not a girl who was underage[,] and to flat out say that he was not interested in an underage girl." Id.

A defendant's statement to law enforcement is "involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." Simmers v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001).

> Whether a confession is involuntary is judged by the totality of the circumstances. . . . The court must look at the "conduct of the officers and the characteristics of the accused." . . . The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary.

United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (quoting Wilson v. Lawrence Cty., 260 F.3d 946, 952 (8th Cir. 2001)). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986).

> [O]fficers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices. None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation caused the defendant's will to be overborne.

11

United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (internal quotations and citations omitted).

Some "of the key concerns in judging whether confessions [are] involuntary . . . [are] the intelligence, mental state, or any other factors possessed by the defendant that might make him particularly suggestible, and susceptible to having his will overborne." Wilson, 260 F.3d at 952. The United States Court of Appeals for the Eighth Circuit "[g]enerally . . . concluded that where the defendant possessed at least average intelligence, then his inculpatory statements were not compelled." LeBrun, 363 F.3d at 726.

The magistrate judge did not err in finding defendant's statements were voluntary. There is no indication defendant's will was overborne by law enforcement coercion. SAs Russell and Barnes were calm and polite to defendant. They did not threaten or intimidate defendant. Contrary to defendant's argument the agents prevented him from articulating his intent not to have sex with a minor, SA Russell specifically asked defendant at the end of the interrogation if there was anything he wanted to add to his statement.[6] (Docket 70-3 at p. 27). Finally, the age mismatch between the advertisement and SA Russell's texts was not designed to trick defendant. SA Russell set the advertisement age at 20 to avoid Backpage deleting the post and to imitate

---

[6]The court is skeptical that an interrogation tactic of the sort defendant alleges—an agent refusing to allow a defendant to make a statement about his intent—could constitute coercive police activity. Defendant cited no authority for that proposition. But because the agents in this case did not use the tactic, the court need not delve into the matter further.

actual pimps. (Docket 74 at pp. 27-28). The later texts were, of course, designed to determine if defendant was interested in purchasing sex from a minor. The court discerns no police coercion in this case at all, and certainly no coercion sufficient to overwhelm defendant's will. Connelly, 479 U.S. at 167; Brave Heart, 397 F.3d at 1041.

Defendant's objection is overruled and the R&R is adopted in full on this point.

### C. Vehicle search

The magistrate judge concluded the government failed to show the search of defendant's vehicle was a lawful inventory search, but concluded the search was valid incident to defendant's arrest. (Docket 84 at pp. 12-19). Defendant asserts the search was not proper incident to arrest because the arrest itself lacked probable cause and because no exigency demanded law enforcement search the vehicle immediately after arrest. (Docket 85 at pp. 5-8). The government "does not object to the overall conclusions in the R&R" regarding the vehicle search, but moves to reopen the record and submit a copy of the inventory log from the vehicle search.[7] (Docket 88 at pp. 7-8). The government contends the inventory log shows the search was valid as an inventory search. Id. at p. 8.

Inventory searches are an exception to the warrant requirement. United

---

[7]According to the government, the inventory log was provided to the defense in October 2018. (Docket 88 at p. 8). Defendant does not object to the court considering the log. Id. at p. 2.

13

States v. Kennedy, 427 F.3d 1136, 1143 (8th Cir. 2005). "The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable. Inventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are reasonable." Id. (internal citation omitted).

The magistrate judge concluded the inventory search was unreasonable because Det. Stauffacher and SA Gromer testified DCI policy requires agents to record contents of a vehicle subject to an inventory search and no evidence was produced of an inventory log. (Docket 84 at pp. 14-18). The magistrate judge did not err—the government failed to produce any evidence of an inventory log or other written recording of the contents of defendant's vehicle at the suppression hearing. The government concedes as much.[8] (Docket 88 at pp. 2, 8). However, the inventory log makes clear that law enforcement complied with the standardized policy testified to at the suppression hearing. Accordingly, the inventory search was valid and the court cannot suppress the items taken from defendant's vehicle.

---

[8]The court notes this is not the first time the government argued a warrantless vehicle search is constitutional as an inventory search and failed to prove the necessary factual predicate at a suppression hearing. See United States v. Faulkner, CR. 17-50144, 2018 WL 6304354 at *9-11 (D.S.D. Dec. 3, 2018) (government failed to produce evidence of police department inventory search policy). The government is reminded that the court cannot simply assume facts necessary to substantiate an inventory search.

Alternatively, the court concludes the search was also valid incident to defendant's arrest.

> Under the search incident to arrest exception to the warrant requirement . . . , officers may search a vehicle incident to an arrest only if (1) the arrestee is unrestrained and "within reaching distance of the passenger compartment" when the search begins or (2) "it is reasonable to believe the vehicle contains evidence of the offense of arrest."

United States v. Stegall, 850 F.3d 981, 984 (8th Cir. 2017) (quoting Arizona v. Gant, 556 U.S. 332, 351 (2009). Here, the second Gant exception applies. Via text message, SA Russell arranged for defendant to meet with the fictional female as long as he wore a condom and paid $200. It was reasonable for officers to believe the vehicle would contain a cell phone used to conduct the text conversation, condoms and currency, all of which would then be evidence of defendant's intent to pay for sex with the fictional minor.

Defendant's arguments to the contrary are unavailing. The court previously found the arrest was valid. See supra Section III.A. The search cannot be invalidated based on the underlying arrest. Defendant's second argument relies on a misreading of Gant. Defendant asserts Gant invalidates a search incident to arrest when the defendant "has been secured, detained, and cannot access the interior of the vehicle." (Docket 85 at p. 8). This only describes the first Gant exception. The second, as noted above, allows law enforcement to search a vehicle when "it is reasonable to believe the vehicle contains evidence of the offense of arrest." Gant, 556 U.S. at 351. Whether defendant had access to the interior of the vehicle or there was some independent exigency demanding an immediate search is irrelevant.

15

The post-arrest search of defendant's vehicle, though warrantless, was valid as either an inventory search or a search incident to arrest. The court overrules defendant's objection and adopts the R&R as modified by this order.

**D.     Cell phone search**

The magistrate judge concluded SA Gromer violated defendant's Fourth Amendment rights by searching his TracFone without a warrant. (Docket 84 at pp. 20-21). However, she also held the contents of the TracFone—which were later seized pursuant to a valid search warrant—should not be suppressed. Id. at pp. 21-22. The government concedes SA Gromer's search was unconstitutional. (Docket 88 at p. 8). Defendant agrees the first search was unconstitutional but seemingly objects to the conclusion that the TracFone evidence should not be suppressed. (Docket 85 at pp. 8-9). He argues law enforcement was "required to have a warrant to even have access to the cell phone to open it." Id. at p. 8. Defendant further asserts the search warrant later issued for the contents of the iPhone "could not make the seizure of the cell phone in the first instance valid." Id. at p. 9.

It appears defendant does not object to the magistrate judge's conclusion the TracFone evidence is saved by the inevitable discovery doctrine. Instead, defendant argues law enforcement did not have the authority to physically seize the TracFone itself. As noted above, the search of defendant's vehicle was valid either as an inventory search or as a search incident to arrest. See supra Section III.C. Law enforcement validly seized the TracFone.

16

However, if defendant had objected to the magistrate judge's use of the inevitable discovery doctrine, the objection would have been well taken. The magistrate judge erred in applying the inevitable discovery doctrine. In the Eighth Circuit,

> the inevitable discovery exception applies when the government proves by a preponderance of the evidence: (1) that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.

United States v. McManaman, 673 F.3d 841, 846 (8th Cir. 2012) (internal quotation omitted). The magistrate judge cited recent Eighth Circuit precedent focusing only on the first prong of this test and did not consider the second prong.[9] (Docket 84 at pp. 21-22) (citing United States v. Sallis, 920 F.3d 577. 582-83 (8th Cir. 2019)).

Here, the government put forward no evidence "there was, at the time of the search . . . , an actual other investigation that would have led to the

---

[9]The court acknowledges some judges of the Eighth Circuit have expressed unease with the inevitable discovery test. See United States v. Thomas, 524 F.3d 855, 860-63 (8th Cir. 2008) (Colloton, J., concurring). The Sallis panel, which did not discuss the second prong of the test, may subscribe to Judge Colloton's views. But the Eighth Circuit *en banc* has yet to overrule the two-pronged approach to the inevitable discovery doctrine and the court must apply this test, not the Sallis panel's simpler test. See T.L. ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006) (requiring courts to follow earliest opinion when confronted with an intracircuit split in authority). In fact, the Eighth Circuit reversed a district court's suppression motion denial for failure to properly apply the test's second prong. See United States v. James, 353 F.3d 606, 617 (8th Cir. 2003).

17

discovery of the otherwise unconstitutionally obtained evidence." James, 353 F.3d at 617. Without that evidence, the court cannot apply the inevitable discovery doctrine.

Nevertheless, the TracFone evidence is plainly admissible under the independent source doctrine.[10] "The independent source doctrine allows admission of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'" United States v. Anguiano, 934 F.3d 871, 874 (8th Cir. 2019) (quoting Murray v. United States, 487 U.S. 533, 537 (1988)).

> To invoke this rule, the government must show (1) that the decision to seek the warrant was independent of the unlawful [search]—i.e., that police would have sought the warrant even if the initial [search] had not occurred—and (2) that the information obtained through the unlawful [search] did not affect the magistrate's decision to issue the warrant.

Id. (internal quotation omitted). Both these prongs are met in the present case.

First, law enforcement would have sought a search warrant for the TracFone even if SA Gromer had not checked the phone's screen at the arrest location. Defendant communicated with SA Russell on the TracFone. The phone and the text messages stored on it are crucial pieces of evidence in this case. It is inconceivable that law enforcement would not have eventually

---

[10]The government raised the independent source doctrine in its briefing, but the magistrate judge did not consider it. (Dockets 70 at pp. 8-9 & 77 at pp. 8-10).

18

sought to search the phone.  In addition, SA Gromer testified he intended to seek a search warrant for the phone while he was on scene.  (Docket 74 at pp. 69-70).  In fact, SA Gromer placed the phone in airplane mode to prevent remote wiping and to preserve evidence for an eventual search.  Id.

Second, the information SA Gromer obtained through unlawfully opening the TracFone on scene did not affect the issuance of the search warrant.  Law enforcement did not inform the magistrate judge that SA Gromer had already searched the phone.  Docket 84 at p. 7; see also Docket 70-1.  No information from the unlawful search was included in the search warrant application.  Id.  The magistrate judge's determination of whether to issue the warrant was therefore unaffected by the information obtained through the unlawful search.

Defendant's objection to the magistrate judge's conclusion the TracFone evidence should not be suppressed is overruled.  The TracFone evidence is admissible under the independent source doctrine.  The R&R is adopted as modified by this order.

**ORDER**

For the reasons given above, it is

ORDERED that defendant's objections to the report and recommendation (Docket 85) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 84) is adopted as modified by this order.

IT IS FURTHER ORDERED that defendant's motion to suppress (Docket 64) is denied.

IT IS FURTHER ORDERED that a scheduling order shall issue.

Dated November 25, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE